UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN PIETRZAK, | : | Case No. 3:11-cv-74 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND TO BE SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 9-11; 23-39) (ALJ's decision)).

I.

Plaintiff applied for DIB and SSI on January 30, 2007, alleging an onset date that same day. (Tr. 23). Plaintiff alleged disability due to chronic hepatitis C, HIV, a heart attack, chest pain, back and right knee pain, joint swelling, fatigue, a bipolar disorder, an obsessive compulsive disorder, and a panic disorder. (Tr. at 30). Plaintiff's claims were denied initially on June 7, 2007 and upon reconsideration on October 5, 2007. (Tr. 23). Plaintiff's applications were heard by an ALJ on December 3, 2009, at which time

Plaintiff (who was represented by an attorney), a medical expert, and a vocational expert testified. (Tr. 23, 49-88).

The ALJ issued a decision in 2010, finding that Plaintiff had the residual functional capacity ("RFC")[1] to perform a reduced range of sedentary work, including jobs that existed in significant numbers in the national economy, and that Plaintiff was therefore neither disabled nor entitled to DIB or SSI. (Tr. 23-39).

Plaintiff requested that the Appeals Council review the ALJ's decision, which it did in 2010. (Tr. 9). The Appeals Council determined that Plaintiff met Listing 13.10[2] and was therefore disabled as of September 1, 2009, but adopted the remainder of the ALJ's decision, finding that Plaintiff was not disabled prior to that date.[3] (Tr. 9-10). The Appeals Council's decision became final and appealable in 2011. (Tr. 1). Plaintiff then initiated this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] A claimant's RFC is considered "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a).

[2] Listing 13.10 requires that a claimant show that she has: (a) Locally advanced carcinoma (inflammatory carcinoma, tumor of any size with direct extension to the chest wall or skin, tumor of any size with metastases to the ipsilateral internal mammary nodes); or (b) Carcinoma with distant metastases; or (c) Recurrent arcinoma, except local recurrence that remits with antineoplastic therapy.

[3] Specifically, the Appeals Council adopted the ALJ's decision at step one. However, at step two, the Appeals Council found claimant's breast cancer impairment to be severe. Additionally, at step three, the Appeals Council found the claimant's breast cancer impairment met listing 13.10. The Appeals Council considered the clinical evidence, finding that Plaintiff had a diagnosis of breast cancer on September 1, 2009, based upon a right breast biopsy. The ALJ's decision found the impairment was not severe. However, Plaintiff had a mastectomy in December 2009 and has/had chemotherapy. The record indicates that Plaintiff has stage four-breast cancer, noting a history of breast cancer metastatic to the lymph nodes. Accordingly, the Appeals Council found that Plaintiff was disabled beginning on September 1, 2009 and entitled to a period of disability and disability insurance benefits. (Tr. 9-10)

Plaintiff is approximately 50 years old.  Plaintiff has her GED and attended two years of classes at a community college.  Plaintiff worked in the past as a forklift driver, waitress, and nurse aid.  (Tr. 25, 38).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:[4]

 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

 2. The claimant has not engaged in substantial gainful activity since January 30, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

 3. The claimant has the following severe impairments: human immunodeficiency virus (HIV); degenerative disc disease of the lumbar spine; osteoarthritis of the right knee, status-post surgery; exogenous obesity; history of hepatitis C; a major depressive disorder; a panic disorder, without agoraphobia; and a history of substance dependence and alcohol abuse, in reported remission (20 CFR 404.1520(c) and 416.920(c)).

 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently.  She can only occasionally perform repetitive pushing and pulling with her right foot.  The claimant can never crawl or climb ladders, ropes, or scaffolds, and she can only occasionally climb ramps or stairs,

---

[4] While the Appeals Council's decision is the Commissioner's final decision under review, the Appeals Council adopted the bulk of the ALJ's decision, with the exception of finding that Plaintiff met Listing 13.10 as of September 1, 2009.

        kneel, crouch, stoop, or bend. She can tolerate no exposure to hazards such as unprotected heights or dangerous moving machinery, and her job must not require food handling. Her job should involve no interaction with the public and no more than occasional and superficial contact with co-workers and supervisors; she should work alone in more of a solitary-type job, but not in total isolation. She can handle routine changes and her work must not involve fast-paced work or strict time standards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 18, 1961 and was 45 years old, which is defined as a younger individual age 45-29, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.(20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2007 through [September 1, 2009] (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-39).

    In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations prior to September 1, 2009, and was therefore not entitled to disability insurance benefits or supplemental security income. (Tr. 9-11).

On appeal, Plaintiff does not advance any particular argument against the ALJ's decision or the Appeals Council's decision, other than alleging that her primary care physician, Dr. Barry McCorkle, made a written statement that she was unable to work. However, a review of the record and decision shows that neither committed any error, other than what has already been corrected by the Appeals Council.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

**The ALJ's Decision as to the Period Before September 1, 2009**

The ALJ details a lengthy review of Plaintiff's medical history, describing her numerous impairments and summarizing her treatment history. For example, the ALJ considered the diagnostic imaging of Plaintiff's back and knee in 2007 (Tr. 26, 30, 483-86); the laboratory test results relating to Plaintiff HIV and hepatitis C status (Tr. 32, 363, 400, 411, 478, 612, 658); Plaintiff's treatment history with Dr. McCorkle and Dr. Smith (Tr. 26, 31, 35); and the physical examinations provided by Drs. Oza, McCorkle, Smith, and various emergency room and other examining physicians. (Tr. 30-31, 35, 362, 384-98, 435-40, 489-91, 502-07, 514, 538, 560, 601-02, 624, 632, 642, 661-62, 679, 688, 699). In response to this evidence, the ALJ suggested a restrictive RFC finding.

The ALJ also considered medical opinion evidence, including that of medical expert, Dr. Boyce; treating physician, Dr. McCorkle; and reviewing physicians, Drs. Cho and McCloud. The ALJ rejected Dr. McCorkle's opinion of unemployability, maintaining that it was contrary to the other opinions of physicians who had reviewed

more evidence and had given more recent opinions.[5] *See* 20 C.F.R. § 404.1527(d)(4). *Simpson v. Astrue*, No. 1:10cv458, 2011 U.S. Dist. LEXIS 71403, at *8 (S.D. Ohio June 7, 2011) ("there may be appropriate reasons" for an ALJ to "accord greater weight to state agency physicians over a [claimant's treating physician," including if the "consulting physician's opinion is based upon more complete information than was available to the treating source").

Specifically, Dr. McCorkle's treatment notes state that a musculoskeletal examination showed normal range of motion and less than one month after Plaintiff's knee surgery she had no complaints of neck, back, or joint pain. (Tr. 31). On January 20, 2009, Plaintiff told Dr. McCorkle that her pain mediation regiment "work[s] fairly well," and Dr. McCorkle noted that her pain syndrome was "well controlled" as early as July 2006. (Tr. 25, 31). In Dr. McCorkle's medical reports dated February 9, 2007 and January 20, 2009, he specifically noted no manifestations of the HIV infection. (Tr. 32). In fact, Dr. McCorkle was administering a B12 injection every two weeks, which was "keep[ing] her strength and immunity up." (Tr. 32). Although Plaintiff complained to Dr. McCorkle of depression and suicidal ideation in February 2007, Dr. McCorkle noted that these symptoms were caused by Atripla[6] and he subsequently changed Plaintiff's

---

[5] Notably, however, the ALJ gave these opinions only some weight and crafted an RFC that was more restrictive than these opinions. (Tr. 71-82).

[6] Atripla is proven to lower viral load and raise T-cell count to help control HIV. Side effects of Atripla include "change in personality . . . behavior changes (e.g., abnormal thoughts, agitation, aggression, anxiety, depression, nervousness, paranoia) . . . suicidal thoughts or actions."

medications. (Tr. 32).

Dr. McCorkle completed a basic medical form on March 7, 2007, indicating that Plaintiff could stand and/or walk, as well as sit for less than a total of four hours in an eight-hour workday and could lift and/or carry no more than ten pounds frequently and twenty pounds occasionally and was markedly limited in the ability to bend and reach and moderately limited in the ability to push and pull. (Tr. 35). Although these lifting restrictions are consistent with Plaintiff's history, Dr. McCorkle's opinion that Plaintiff is capable of less than sedentary work activity is inconsistent with the signs and findings upon examination in his treatment notes. Accordingly, the ALJ gave little weight to his opinion that Plaintiff was unemployable. Moreover, the determination of disability is a question reserved to the Commissioner. 20 C.F.R. § 404.1527(e). An ALJ must carefully consider all medical opinions concerning a Plaintiff's RFC, but where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ also considered other relevant facts, such as Plaintiff's credibility. (Tr. 33-34). The ALJ considered Plaintiff's activities of daily living, her treatment history, her use of a cane that was not prescribed by any physician, and inconsistencies in her statements about her drug and alcohol use, her hospitalizations, and her work history. (Tr. 27, 33-34). The ALJ also evaluated the evidence regarding Plaintiff's mental

impairments and reasonably concluded that those impairments further limited her ability to do basic work activities but were not singly, or in combination with Plaintiff's other impairments, disabling.

The record contained five medical opinions relating to Plaintiff's mental functioning, which the ALJ addressed in detail. The ALJ gave little weight to Dr. McCorkle's opinions, noting that he was not a treating mental health physician and that the other evidence in the record contradicted his extreme opinions. (Tr. 37). *Cathcart v. Astrue*, No. 3:09cv420, 2011 U.S. Dist. LEXIS 21453, at *32-33 (S.D. Ohio Jan. 10, 2011) (the ALJ "did not err by discounting [physician's] opinion that [the claimant] could not work due to his alleged mental impairment, because [the physician] is not certified in the area of mental health treatment").

The ALJ also devoted a substantial portion of his decision to treating psychiatrist Dr. Singh's opinion. (Tr. 36-37). He pointed out that Dr. Singh's opinion of marked limitations in certain functions was contradicted and unsupported by Dr. Singh's own treatment notes. (Tr. 36-37). Additionally, Dr. Singh assigned Plaintiff a GAF[7] score of 55, which indicates only moderate symptomology. (Tr. 36-37, 566, 579). *Harlow v. Astrue*, No. 3:10cv242, 2011 U.S. Dist. LEXIS 72554, at *10-11, (S.D. Ohio July 6,

---

[7] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

2011) (ALJ noted "crucial and glaring" internal inconsistency in doctor's opinion where doctor opined that the claimant had moderate or moderately severe limitations in every functional category but concluded that the claimant was disabled). The ALJ noted that Dr. Singh's opinions rested more on Plaintiff's subjective reports than on his own clinical observations, and that in light of Plaintiff's credibility problems, this was another reason to give little weight to Dr. Singh's opinion. (Tr. 37). *Hicks v. Comm'r of Soc. Sec.*, 2:09cv1001, 2011 U.S. Dist. LEXIS 31508, at *40 (S.D. Ohio Feb. 2, 2011) (noting that while the diagnostic techniques in the mental health field are likely to be less tangible than those in other fields of medicine, it "does not mean that an ALJ is required to accept the mental impairment opinions of a treating physician who relies solely on a [claimant's] subjective complaints").

Additionally, the ALJ also noted Plaintiff's activities of daily living – such as caring for her granddaughter, social functioning, cooking, performing household chores, traveling, and her credibility, and explained how they did not support her allegations of disability. (Tr. 30, 34). The ALJ noted that Plaintiff's claims of hospitalizations for panic attacks were totally unsupported in the record. (Tr. 33)

While Plaintiff may disagree with the ALJ's decision, his decision is clearly within the "zone of choices" afforded to him. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference."). The issue is not whether the record

could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.[8]

The Appeals Counsel's Decision as to the period beginning September 1, 2009 was proper and does not appear to be contested by Plaintiff.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Karen Pietrzak was not entitled to disability insurance benefits before September 1, 2009, is found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: February 15, 2012            *s/ Timothy S. Black*
                                   Timothy S. Black
                                   United States District Judge

---

[8] The Court notes that there is no indication, as Plaintiff alleges, that she was denied benefits due to a "lack of timeliness." (Doc. 19).